

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CLIFFORD FORTUNE, JULIE FORTUNE, THEO. P. CRAWFORD, DIANNA CRAWFORD, ARLEY JOLLIFFE, DEWAYNE BLACKMAN, LARRY BROWN, MONTANA TRAIL VEHICLE RIDERS ASSN., CAPITAL TRAIL VEHICLE RIDERS ASSN., MONTANAN'S FOR MULTIPLE USE,<br><br>                        Plaintiffs,<br><br>vs.<br><br>LESLIE THOMPSON, Lewis & Clark National Forest Supervisor; LESLIE WELDON, Regional Forester, Region One, an Agency of the UNITED STATES FOREST SERVICE,<br><br>                        Defendants,<br>and<br><br>GLACIER-TWO MEDICINE ALLIANCE, MONTANA WILDERNESS SOCIETY, and THE WILDERNESS SOCIETY,<br><br>                        Defendant-Intervenors. | No. CV-09-98-GF-SEH<br><br>**MEMORANDUM AND ORDER** |

## PLEADING BACKGROUND

This case arises from the United States Forest Service's adoption of the Badger-Two Medicine Travel Management Plan ("Travel Plan") that incorporates motorized access limitations on a portion of the Lewis and Clark National Forest. The Complaint asserts eight causes of action for violations of constitutional and treaty rights, the National Environmental Policy Act ("NEPA"), National Forest Management Act ("NFMA"),[1] and Administrative Procedure Act ("APA"). The treaty, equal protection, and due process claims (Counts II and III) were dismissed by Order of January 13, 2010. Cross-motions for summary judgment to the remaining counts (Counts I and IV-VIII) are fully briefed. The Court has jurisdiction under 28 U.S.C. § 1331.

## FACTUAL BACKGROUND[2]

Badger-Two Medicine consists of approximately 129,520 acres within the northern portion of the Lewis and Clark National Forest's Rocky Mountain Ranger District. It is bordered by Glacier National Park, the Great Bear

---

[1] Alleged violations of NFMA not supported by substantive argument are disregarded. See Wildwest Inst. v. Bull, 468 F. Supp. 2d 1234, 1243 (D. Mont. 2006).

[2] The factual summary is drawn from the administrative record. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985); Camp v. Pitts, 411 U.S. 138, 142 (1973); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419-20 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).

2

Wilderness, and the Bob Marshall Wilderness. No wilderness study areas exist within its parameters.[3]

Badger-Two Medicine has been managed under the Lewis and Clark Forest Travel Plan map since 1988. In 2000, the Forest Service sought public input about updating and revising travel management restrictions. A need for change was determined to exist. Formal procedures were undertaken. Public meetings were held in seven locations, including the Blackfeet Reservation. Public comment was reviewed. Significant issues to be analyzed were identified. A Draft Environmental Impact Statement was developed and submitted for public viewing in June of 2005. A Final Environmental Impact Statement ("FEIS"), consisting of five stated alternatives, was issued in October of 2007.

Two Records of Decision ("RODs") based on the FEIS were issued. One dealt specifically with Birch Creek South, an area totaling approximately 262,180 acres located directly south of Badger-Two Medicine. Alternative 4, with modifications, was selected in the Birch Creek South ROD. The decision implemented a mix of motorized use and non-motorized use. The ROD that

---

[3] This Court's ruling in Russell Country Sportsmen v. USFS, 2010 WL 889870 (D. Mont. Mar. 10, 2010) has no parallel application here.

specifically addressed Badger-Two Medicine selected Alternative 5, with modifications, from the FEIS. Closure of most motorized use in Badger-Two Medicine, except for roughly eight miles, was contemplated. Snowmobile access in Badger-Two Medicine was denied in its entirety. Only the Badger-Two Medicine Travel Plan is challenged in this case.

## ISSUES

The substantive issues before the Court are:

1. Does the Travel Plan violate the Establishment Clause of the First Amendment to the United States Constitution?

2. Does the Travel Plan violate NEPA or the APA by:

    a. Failing to provide balanced opportunities for motorized and non-motorized recreation?

    b. Failing to adequately analyze the cumulative impacts upon motorized recreation?

    c. Inappropriately relying upon certain scientific data?

    d. Failing to adequately analyze economic and social impacts?

    e. Failing to conduct a programmatic EIS?

## STANDARD OF REVIEW

*APA Standard*

A reviewing court shall "hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); see also Pit River Tribe v. USFS, 469 F.3d 768, 778 (9th Cir. 2006). Review under the arbitrary and capricious standard is narrow. Earth Is. Inst. v. USFS, 442 F.3d 1147, 1156 (9th Cir. 2006), abrogated on other grounds by Winter v. Nat. Resources Def. Council, Inc., 129 S. Ct. 365, 375-76 (2008). The reviewing court may not substitute its judgment for that of the agency. Id. The court's role is to ensure that the agency made no clear error of judgment. Marsh v. Or. Nat. Resources Council, 490 U.S. 360, 378 (1989). Such an error of judgment arises when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Veh. Mfrs. Assn. v. St. Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983); see also Lands Council v. McNair, 537 F.3d 981, 993 (9th Cir. 2008) (en banc), abrogated on other grounds by Winter, 129 S. Ct. at 375-76.

*Summary Judgment Standard*

Summary judgment is appropriate when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Final agency actions are particularly susceptible to summary judgment because the only issues are issues of law. See Occidental Engr. Co. v. INS, 753 F.2d 766, 770 (9th Cir. 1985); Cabinet Resource Group v. USFWS, 465 F. Supp. 2d 1067, 1078 (D. Mont. 2006).

## DISCUSSION

*Establishment Clause*

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I. Governmental action passes Establishment Clause scrutiny if it (a) has a secular purpose; (b) the principal or primary effect neither advances nor inhibits religion; and (c) there is no excessive entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971).[4] Plaintiffs argue that the Travel Plan prefers Native American religion and that such preference is the only justification for near closure of motorized use. Neither argument has merit.

A.   Secular Purpose

The Forest Service is no stranger to Establishment Clause challenges for

---

[4] All parties, including Defendant-Intervenors and Amicus Curiae National Trust for Historic Preservation, agree that the Lemon test applies to the case sub judice. Compare McCreary Co. v. Am. Civil Liberties Union of Ky., 545 U.S. 844, 859-64 (2005) with Van Orden v. Perry, 545 U.S. 677, 685-86 (2005) (plurality).

6

protection of traditional cultural properties. See Access Fund v. USDA, 499 F.3d 1036, 1039 (9th Cir. 2007). There the agency decided that Cave Rock was eligible for protection as a traditional cultural property and archaeological site. Id. at 1040. A resource management plan was developed that prohibited rock climbing on Cave Rock, a particularly important religious feature to the Washoe Native American religion. Id. at 1039-41. The agency's decision was affirmed. Id. at 1046. The Ninth Circuit concluded "that the fact that Cave Rock also derives its historical and cultural force in part from its role in Washoe religious belief and practice does not counsel the conclusion that the Forest Service acted with the purpose of advancing religion." Id. at 1044; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 975 (9th Cir. 2004).

Here the Travel Plan sets forth a host of secular purposes, including benefits to air quality, water quality, soil quality, wildlife habitat, and fish habitat. Consideration was also given to the Traditional Cultural District located within Badger-Two Medicine and to resources governed by the National Historic Preservation Act, 16 U.S.C. § 470f. Even if the Forest Service's consideration and decision were enacted in part to mitigate interference with the Blackfeet's religious practices, this objective alone does not signify a constitutional violation. See Lynch v. Donnelly, 465 U.S. 668, 680 (1984) (violation of secular purpose prong only when activity is "motivated wholly by religious considerations").

The stated purposes demonstrate that the Forest Service's decision lacks the ostensible and predominant purpose to advance religion. No evidence suggests the reasons are a front for covert religious objectives. Unconstitutional motives usually cannot be attributed when credible secular purposes exist. Newdow v. Rio Linda Union Sch. Dist., 597 F.3d 1007, 1035 (9th Cir. 2010); Am. Family Assn. v. City of S.F., 277 F.3d 1114, 1121 (9th Cir. 2002).

### B. Principal or Primary Effect

Effect analysis requires the courts, from the perspective of an informed and reasonable observer, to determine whether, irrespective of the government's actual purpose, the actions at issue convey endorsement or disapproval. Lynch, 465 U.S. at 690 (O'Connor, J., concurring); Am. Family Assn., 277 F.3d at 1122; Vernon v. City of L.A., 27 F.3d 1385, 1398 (9th Cir. 1994). The fact that religion merely benefits from governmental action does not itself prescribe a constitutional violation. Marsh v. Chambers, 463 U.S. 783, 792-95 (1983); Lynch, 465 U.S. at 681-83 (majority); Access Fund, 499 F.3d at 1045; cf. Van Orden, 545 U.S. at 681, 689-92 (plurality).

The Travel Plan benefitted a number of resources, identified by the ROD and FEIS, and was supported by the majority of the public. The result is not, as claimed by the Plaintiffs, a cathedral for the Blackfeet religion. Rather, any

8

individual, regardless of religion, may access Badger-Two Medicine by motorized (albeit limited) and non-motorized means. The decision is devoid of any informed and reasonable perception that it endorses religion.[5]

### C. Excessive Entanglement

Actions that avoid monitoring religious practice and developing expertise in religious worship comply with the excessive entanglement prong. Access Fund, 499 F.3d at 1046. No facts of record demonstrate that the Forest Service interfered with the Blackfeet religion. Forest Service encounters with the Blackfeet are not shown to go beyond administrative enforcement of the Travel Plan. Such interaction does not constitute excessive entanglement in violation of the Establishment Clause. See Hernandez v. Commr. of Internal Revenue, 490 U.S. 680, 696-97 (1989); Cammack v. Waihee, 932 F.2d 765, 780-81 (9th Cir. 1991). All elements of the Lemon test are met.

### *NEPA*

NEPA is purely procedural. DOT v. Public Citizen, 541 U.S. 752, 756-57 (2004). It forces agencies to consider the significant environmental impacts of a proposed action and to inform the public that environmental concerns were part of

---

[5] Plaintiffs attempt to insert an acreage calculation analysis when determining the quantum of Forest Service land subject to historical and cultural protection. The Ninth Circuit has placed no such acreage limitation if the governmental action complies with the Lemon test. See Access Fund, 499 F.3d at 1045-46.

the decision making process. Balt. Gas and Elec. Co. v. Nat. Resources Def. Council, Inc., 462 U.S. 87, 97 (1983); see also 40 C.F.R. § 1502.1. The agency must take a "hard look," but it mandates no substantive outcomes. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350-51 (1989); Strycker's Bay Neighborhood Council, Inc. v. Karlen, 444 U.S. 223, 227-28 (1980) (per curiam).

### A. Balanced Opportunities and Disabled Access

NEPA requires an EIS for all "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C). An EIS "shall briefly specify the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action." 40 C.F.R. § 1502.13. Appropriate and reasonable alternatives must be considered. Native Ecosystems Council v. USFS, 428 F.3d 1233, 1246-47 (9th Cir. 2005). Alternatives failing to advance the purpose of the project are not reasonable or appropriate. Id. at 1247 (citing Westlands Water Dist. v. USDOI, 376 F.3d 853, 868 (9th Cir. 2004); Laguna Greenbelt, Inc. v. USDOT, 42 F.3d 517, 524 (9th Cir. 1994)).

Here the FEIS designated numerous purposes and needs.[6] The ROD sought

---

[6] These purposes and needs included: (1) "to provide the public with opportunities to use both non-motorized and motorized modes of transportation to access public lands and travel on National Forest System (NFS) lands, roads, and trails;" (2) "to address the effects of [ATVs] on various resources and the suitability of trails to accommodate them;" (3) "to develop a simpler

to balance those purposes and needs. Although the decision to close a substantial portion of roads in Badger-Two Medicine may be viewed as unfair by Plaintiffs, NEPA does not mandate a particular result. See Vt. Yankee Nuclear Power Corp. v. Nat. Resources Def. Council, Inc., 435 U.S. 519, 558 (1978) (prohibiting courts or citizenry from using NEPA to force the agency into making a particular decision); Idaho Sporting Cong., Inc. v. Rittenhouse, 305 F.3d 957, 963 (9th Cir. 2002). Moreover, not only did other purposes and needs exist, but the FEIS addressed both Badger-Two Medicine and Birch Creek South. Taken together, the two allowed motorized and non-motorized uses and provided for balanced use.[7]

Mitigation issues related to disabled access were also sufficiently discussed. See Neighbors of Cuddy Mt. v. USFS, 137 F.3d 1372, 1380 (9th Cir. 1998). Formulation and adoption of a mitigation plan was not required. See Robertson, 490 U.S. at 353.

---

travel plan with fewer categories of restrictions;" (4) "to determine if types and levels of use on each route accommodate safe travel for all;" (5) "to determine if [non-system routes] provide a desirable recreational opportunity;" (6) "to assess the effects of snowmobiling and identify suitable opportunities for this activity;" and (7) "to assess the opportunities for providing and effects of marking more non-motorized winter recreation opportunities." FEIS at 3-4.

[7] Plaintiffs also claim error in the Forest Service's administrative decision to separate Badger-Two Medicine and Birch Creek South into two RODs. No helpful precedent demonstrating error is provided. This Court is to avoid "impos[ing] upon the agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good." Vt. Yankee Nuclear Power Corp., 435 U.S. at 549.

B. <u>Cumulative Impacts Upon Motorized Access</u>

An EIS is to analyze the relevant project in light of past, current, and reasonably foreseeable future projects. 40 C.F.R. § 1508.7; <u>Ecology Ctr. v. Castaneda</u>, 574 F.3d 652, 666 (9th Cir. 2009). Here the cumulative impacts of the entire travel management plan at the district level, the Forest level, and the eastern side of the continental divide were described. Potential scenarios for motorized recreation in eastern Montana were quantified, assuming certain reductions in motorized opportunities. More specific data does not exist. Further detail is therefore unnecessary. The Forest Service was not required to speculate or do the impractical in a cumulative impacts analysis. <u>See</u> <u>League of Wilderness Defenders-Blue Mts. Biodiversity Project v. USFS</u>, 549 F.3d 1211, 1220 (9th Cir. 2008); <u>N. Alaska Envtl. Ctr. v. Kempthorne</u>, 457 F.3d 969, 979-80 (9th Cir. 2006); <u>Inland Empire Public Lands Council v. USFS</u>, 88 F.3d 754, 763-64 (9th Cir. 1996). The cumulative impacts analysis is not arbitrary and capricious.

C. <u>Misuse of Scientific Data</u>

Plaintiffs take issue with the Forest Service's reliance on the 1996 Mace et al. ("Mace") grizzly bear study as justification for closing motorized roads. Fault is also found with the Forest Service's use of the 2001 Gucinski et al. ("Gucinski") study's findings on roads and in applying them to roads and trails.

Review of agency science is a challenging task. Courts are not to instruct an agency on how best to validate hypotheses or choose between scientific studies. Lands Council, 537 F.3d at 988. Inaccurate information in an EIS, by contrast, may impair the evaluation of the agency and public on adverse environmental impacts of the proposed agency action. Nat. Resources Def. Council v. USFS, 421 F.3d 797, 811-12 (9th Cir. 2005).

The Forest Service cited Mace for the proposition that traffic volume impacts wildlife response to motorized travel. It also analyzed other scientific studies, noting "[u]nder certain circumstances, non-motorized travel can have a greater impact on wildlife, whereas in other situations the opposite may be true." FEIS at 378; see also FEIS at 271 ("At least one study that looked at grizzly bear response to both motorized and non-motorized trails . . . appears to support the idea that they may have impacts similar to those of roads."). Plaintiffs' argument is unconvincing. Mace was not cited as justification for prohibiting motorized access.

If it be assumed that Plaintiffs correctly characterized the Forest Service's reliance on Gucinski, this Court nevertheless must proceed with great caution when asked to preclude the agency from using findings for roads and applying them to roads and trails. Extrapolation of general principles and application of

them to specific and similar scenarios is a matter at the heart of science. See Lands Council, 537 F.3d at 988; Balt. Gas and Elec. Co., 462 U.S. at 103. Such scientific acts will not be disturbed absent justification to do so. No such justification exists here.

Moreover, Gucinski was not applied as alleged. It had no part in calculating correlations between trail use and sediment. Other sources, including a study that analyzed monitoring data from trails open to motorized use in Badger-Two Medicine, were utilized. Variables and distinctions between primary roads, primitive two tracks, and trails were well known. Other variables were recognized as well.[8] The use of science was not arbitrary and capricious.

### D.   Economic and Social Impacts Analysis

Plaintiffs argue that the Forest Service's conclusion that a decrease in motorized recreation will have no impact on the local economy is contrary to the agency's own findings. They also assert that the social impacts analysis is flawed because it provides no justification for valuing non-motorized use over motorized use. Neither argument is persuasive.

An EIS is to include an analysis of the direct, indirect, or cumulative

---

[8] "The degree of disturbance and compaction varies by site and would correspond to the type of driver, vehicle, tire tread, tire width, weight, angle of force to the soil, and vegetative cover." FEIS at 79.

economic and social impacts of an agency's decision. 40 C.F.R. § 1508.8; Lee v. U.S. Air Force, 354 F.3d 1229, 1240 (10th Cir. 2004). A court must require an agency to revise the EIS if the social and economic analysis was so incomplete or misleading that the agency and public were unable to knowledgeably compare the available alternatives. Nat. Resources Def. Council, 421 F.3d at 811-12.

The FEIS here analyzed the economic impacts on the local economy, recognizing that few businesses exclusively serviced OHVs[9] and snowmobiles, that no riders would sell their OHVs and snowmobiles as a result of the Travel Plan, and that the Rocky Mountain Division, which encompasses Badger-Two Medicine, does not attract OHV and snowmobile riders from other locations. It was also noted that OHV and snowmobile riders could obtain motorized access to areas within a few miles of Badger-Two Medicine, and if riders chose to access areas farther away, they would likely spend money on gas, food, and lodging. See also FEIS at 335 ("It is possible there would be offsetting increases in other types of businesses that cater to non-motorized recreationists . . . ."). Shifts in spending were recognized as possible. Nonetheless, the analysis convincingly demonstrated that the local economy would not sustain an adverse effect as a result of the decision. See Ctr. for Biological Diversity v. Kempthorne, 588 F.3d 701, 711 (9th Cir. 2009).

---

[9] OHV is an acronym for "off-highway vehicles" and includes "[a]ny motorized wheeled vehicle designed for cross-country travel over any kind of terrain." FEIS at 502.

15

The social impacts analysis began by documenting public perceptions of the Rocky Mountain Division. It analyzed the social impacts on the Rocky Mountain Front and conflicts between motorized and non-motorized users. Arguments that the Forest Service erred in its social impacts analysis amount to little more than substantive disagreement with the final decision. NEPA is ill equipped to sustain substantive challenges. Vt. Yankee Nuclear Power Corp., 435 U.S. at 558. The procedural mandates of NEPA, by taking the requisite "hard look" at both the social and economic impacts of the decision, were met.[10]

E.   Programmatic EIS

Plaintiffs claim that the Forest Service must conduct a regional EIS because there is in fact a regional plan to reduce motorized recreation. Such a plan or directive is wholly unsupported by the record. No programmatic EIS need be conducted. See Kleppe v. Sierra Club, 427 U.S. 390, 402, 413-15 (1976); Sierra Club v. Hodel, 544 F.2d 1036, 1040-41 (9th Cir. 1976). There is also no final agency action allowing review at the regional level under the APA. See 5 U.S.C. § 704; Lujan v. Natl. Wildlife Fedn., 497 U.S. 871, 894 (1990) (rejecting a claim that failed to identify a final agency action).

---

[10] Plaintiffs attempt to argue that the Forest Service needed to supplement the FEIS with economic, social, and other analyses. This claim was not alleged in the Complaint. Even if Plaintiffs properly plead such a claim, "an agency need not supplement an EIS every time new information comes to light after the EIS is finalized." Marsh, 490 U.S. at 373; see also 40 C.F.R. § 1502.9(c)(1). No circumstances here warrant the provision of a supplemental EIS.

## CONCLUSION

Adoption of the Badger-Two Medicine Travel Plan was not flawed. All substantive and procedural requirements of law were met.

ORDERED:

1. The United States' Motion for Summary Judgment[11] is GRANTED.

2. Plaintiffs' Motion for Summary Judgment[12] is DENIED.

3. Intervenors' Motion for Summary Judgment[13] is GRANTED.

4. The Clerk is directed to enter judgment accordingly.

DATED this 20th day of January, 2011.

SAM E. HADDON
United States District Judge

---

[11] Document No. 61

[12] Document No. 62

[13] Document No. 60